**MID–AMERICA REGIONAL COUNCIL, Plaintiff,**

v.

**F. David MATHEWS, Secretary, Department of Health, Education and Welfare, et al., Defendants.**

**No. 76 CV 257 W–4.**

United States District Court, W. D. Missouri, W. D.

June 18, 1976.

Billy S. Sparks, Linde Thomson Fairchild Langworthy & Kohn, Peter S. Levi, Joseph James, Kansas City, Mo., for plaintiff.

E. Eugene Harrison, Asst. U. S. Atty., Kansas City, Mo., for F. David Mathews; Caroline McBride French, Acting Regional Atty., Rev. VII, Dept. of HEW, Kansas City, Mo., of counsel.

Alan L. Atterbury and Karl F. Schmidt, Kansas City, Mo., for Mid-America Health Systems Agency, Inc.

## MEMORANDUM AND ORDER

ELMO B. HUNTER, District Judge.

This action is brought by Mid-America Regional Council (hereinafter MARC) to set aside the conditional designation of defendant Mid-America Health Systems Agency, Inc., (hereinafter MASHA) as the health systems agency for the eight county bi-state region of the metropolitan Kansas City area. Plaintiff also seeks to set aside any contract or agreement entered into between MASHA and the Department of Health, Education and Welfare and to permanently enjoin defendants F. David Mathews and Holman R. Wherritt, Secretary and Regional Health Administrator for Region VII of H.E.W. respectively, from disbursing any Department of Health, Education and Welfare funds to MASHA pursuant to those contracts or agreements.

By letter under date of April 7, 1976, defendant Wherritt notified MASHA that it had been conditionally designated as a health systems agency under the provisions of the National Health Planning and Resources Development Act of 1974, Public Law 93–641, 42 U.S.C.A. §§ 300k et seq. On April 29, 1976, MARC, which was the only other applicant for designation as the health systems agency for the same health systems area, filed the present complaint and a request for a temporary restraining order.

The claims raised in plaintiff's complaint are basically four in number. First, it is claimed that defendant Mathews, Secretary of the Department of Health, Education and Welfare, failed to personally consult with the Governors of Missouri and Kansas prior to the conditional designation of MASHA as a health systems agency as required by 42 U.S.C.A. § 300*l*–4(b)(4)(C). That section provides that no entity may be conditionally designated as a health systems agency until ". . . the Secretary has consulted with the Governor of each State in which such health service area is located . . . ." In this respect, plaintiff contends that (1) the duty to consult was a non-delegable function and (2) even if the duty to consult was delegable, there was in fact no consultation by any officers or other personnel of H.E.W. with the governors as required by the Act. Second, plaintiff claims that the designation decision was a non-delegable function of the Secretary alone and thus the actual designation by defendant Wherritt was of no effect. Third, plaintiff asserts that MASHA was not eligible for conditional designation as a health systems agency since it was a private nonprofit corporation which was "controlled by" another entity, a status which is pro-

scribed by the provisions of 42 U.S.C.A. § 300*l*–1(b)(1)(A). Finally, it is urged that H.E.W. failed to timely notify MARC, as an A–95 agency, of the grant award to MA-SHA as required by Circular A–95; Regulations under § 204 of the Demonstration Cities and Metropolitan Development Act of 1966, Title VI of the Intergovernmental Cooperation Act of 1968, and § 102(2)(C) of the National Environmental Policy Act of 1969; and particularly Part I, ¶ 6, of those Regulations which appear at 41 Federal Register, No. 8, January 13, 1976. In addition to these specific four issues, plaintiff's complaint generally alleges that the designation determination in question here was arbitrary, capricious, and in bad faith.

Following the filing of the present complaint, the Court met with counsel for all parties to consider the appropriate action to be taken with respect to the pending request for a temporary restraining order. During that conference the parties agreed to submit this matter fully and finally on the merits. To that end, the parties met prior to the Court's hearing in this cause held on June 1, 1976, and successfully stipulated most of the factual issues. In addition to consideration of those stipulated matters, the Court has received in evidence and carefully considered a large volume of exhibits, the testimony of Mr. Robert E. Eisler, Jr., and Mr. John H. Kraemer who appeared on behalf of defendant MASHA, and the testimony of defendant Dr. Holman R. Wherritt. In accordance with the findings and reasons stated below, the Court finds the controlling issues in this cause against the plaintiff and is denying plaintiff's request for a permanent injunction and all other requested relief.

### Jurisdiction

Plaintiff asserts that this Court has jurisdiction pursuant to the provisions of 5 U.S.C. §§ 701 et seq., 28 U.S.C. § 1331, 28 U.S.C. § 1361, 28 U.S.C. § 1337, and 28 U.S.C. § 2201. In the Court's opinion, however, there is a substantial question whether this Court has proper jurisdiction of this particular controversy under any of the above-listed provisions.[1]

■ With regard to jurisdiction under the Administrative Procedure Act, 5 U.S.C. §§ 701 et seq., the Eighth Circuit Court of Appeals has held that no independent jurisdictional basis exists or is created by the provisions of that Act. *Twin Cities Chippewa Tribal Council v. Minnesota Chippewa Tribe,* 370 F.2d 529, 532 (8th Cir. 1967). And despite mounting authority to the contrary, the Eighth Circuit Court of Appeals has not yet definitely overruled its holding in *Twin Cities* decision. *See, St. Louis University v. Blue Cross Hospital Service,* 537 F.2d 283 (8th Cir. 1976). Likewise, the Declaratory Judgment Act, 28 U.S.C. § 2201, does not provide an independent jurisdictional basis. *See, State Farm Mutual Automobile Ins. Co. v. Bonwell,* 248 F.2d 862 (8th Cir. 1957); *Employers Mutual Casualty Co. v. El Dorado Springs R–2 School District,* 264 F.Supp. 669 (W.D.Mo.1967); 10 Wright and Miller, Federal Practice and Procedure § 2766 (1958). Thus plaintiff must establish independent jurisdiction under the Mandamus and Venue Act, 28 U.S.C. § 1361; or on the basis that this action arises under any Act of Congress regulating commerce as provided by 28 U.S.C. § 1337; or on the basis that this action arises under federal law and the amount in controversy exceeds $10,000 exclusive of interest and costs, as provided by 28 U.S.C. § 1331.

■ It is doubtful that the Court has jurisdiction under the provisions of the Mandamus and Venue Act. Several courts have held that the mandamus statute does not confer subject matter jurisdiction where it otherwise does not exist. *J. C. Penney Co. v. United States Treasury Department,* 439 F.2d 63 (2nd Cir.), *cert. de-*

---

1. Defendant MASHA argues in its trial brief that plaintiff lacks standing to challenge its conditional designation as a health systems agency. Defendant's arguments in that respect are unpersuasive. MARC as a rejected appli-

cant for designation was aggrieved and injured by the H.E.W. decision in favor of MASHA, and, consequently, clearly has standing to challenge that decision.

*nied,* 404 U.S. 869, 92 S.Ct. 60, 30 L.Ed.2d 113 (1971); *Akins v. Saxbe,* 380 F.Supp. 1210 (D.Me.1974). Moreover, 28 U.S.C. § 1361 provides that a court may only compel an agency to "perform a duty owed to the plaintiff" which has generally been interpreted to mean that a plaintiff must have a clear right to the relief sought and the agency must have a clear, not discretionary, duty to do the act in question. *See, e. g., Lyons v. Weinberger,* 376 F.Supp. 248 (D.C.N.Y.1974). "Where the duty . . . depends upon a statute or statutes the construction or application of which is not free from doubt, it is regarded as involving the character of judgment or discretion which cannot be controlled by mandamus." *Wilbur v. United States ex rel. Kadrie,* 281 U.S. 206, 219, 50 S.Ct. 320, 324, 74 L.Ed. 809 (1930). The Court is of the view that this action and the relief requested by plaintiff clearly contemplates a review of what was to a great degree a discretionary agency decision not reviewable by mandamus.

■ It is also questionable whether there is jurisdiction either under 28 U.S.C. § 1337 or § 1331. Plaintiff has not shown how this action arises under a federal law or statute regulating commerce or protecting trade, and the Court is of the opinion that it does not. Neither is the Court convinced that the requirements of 28 U.S.C. § 1331 have been met. Although plaintiff's complaint alleges that the amount in controversy exceeds the statutory requirement of $10,000, exclusive of interest and costs, that allegation is apparently based on the fact that the budgetary grant to defendant MASHA exceeds $10,000. The amount in controversy is tested by the value of the action to the plaintiff. *Kheel v. Port of New York Authority,* 457 F.2d 46 (2nd Cir. 1972); *Massachusetts State Pharmaceutical Assn. v. Federal Prescription Service,* 431 F.2d 130 (8th Cir. 1970). In this instance if the Court were to find in plaintiff's favor, that judgment would not and, indeed, could not operate to vest in MARC the right to be designated a health systems agency and to be awarded the accompanying budgetary grant. Hence, the amount of the MASHA budget is actually collateral to this action and the relief that is requested or that can be granted. As a consequence, in order to satisfy the amount in controversy requirement of § 1331, plaintiff must establish that the right it asserts has a value which is ascertainable, measurable, and greater than the statutory minimum of $10,000. Where, however, the matter in dispute is incapable of being reduced to a pecuniary standard of value, then jurisdiction cannot be predicated on 28 U.S.C. § 1331. 1 Moore's Federal Practice ¶ 0.92(5). In this instance, the Court doubts that the budgetary amount awarded to MASHA is the proper measure of the amount in controversy or that the right asserted or relief requested by plaintiff can be monetarily valued except by mere speculation and conjecture.

■ Although it is highly doubtful that there is a proper and independent jurisdictional basis for the requested review of the agency action here in issue, the Court is concerned that if this cause were dismissed for lack of jurisdiction plaintiff would appear to be without a forum to challenge the agency decision. Accordingly, in the interests of justice and in light of the Court's decision as to the merits of the present matter, the Court will proceed to state its findings and conclusions as to the issues raised in plaintiff's complaint rather than dispose of this case on jurisdiction grounds.

### Issues of Delegation

Plaintiff asserts that the conditional designation of MASHA as a health systems agency is void because of delegation of two non-delegable functions. First, it is claimed that the defendant Secretary did not personally consult with the Governors of Missouri and Kansas prior to the designation decision but instead delegated that function even though the Act states that no agreement for conditional designation of a health systems agency may be entered into until ". . . the *Secretary* has consulted with the Governor of each State in which such health service area is located . . . .."

**902**

42 U.S.C.A. § 300*l*–4(b)(4)(C).[2]  (Emphasis added.)

Second, plaintiff contends that the approval and conditional designation of MASHA as a health systems agency by defendant Wherritt as the Secretary's delegate was made without statutory authority since 42 U.S.C.A. § 300*l*–4(a) requires that ". . . the *Secretary* shall enter into agreements in accordance with this section for the designation of health systems agencies." (Emphasis added.)

■  Although once not so, courts have now generally approved the practice of subdelegation of authority by agency officials. *See, e. g., Earnest v. Moseley,* 426 F.2d 466 (10th Cir. 1970); *Equal Employment Opportunity Comm. v. Raymond Metal Products Co.,* 385 F.Supp. 907 (D.Md.1974).  *See generally* 1 Davis Administrative Law Treatise § 9.01 et seq.  Plaintiff, however, asserts that both the pertinent statutory language and the very nature of the Act, which has had and will have an important impact and effect on the states and their political subdivisions, require and mandate the conclusion that the Secretary alone has the nondelegable authority to consult and designate.  But plaintiff does not cite, and the Court has not found, any legislative history which supports plaintiff's non-delegation contentions.  The mere usage of the word "Secretary" throughout the statutory language of the Act does not alone compel the conclusion that the Secretary could not delegate certain of his functions.  To the contrary, a reading of the Act discloses that Congress dictated that a massive and complex program to provide for the improvement of health care services across the country be instituted by the Department of Health, Education and Welfare within a

very short span of time.[3]  In light of the task and the time frame, Congress could not have intended that the Secretary alone carry out all of the necessary functions and decisions required to implement the Act.  Plaintiff apparently would have the Secretary personally consult with 50 governors with respect to the designation of over 200 health systems agencies and personally select those health systems agencies from an unknown number of applicants, each of which may well have submitted applications of several hundred pages in length.[4]

■  In light of the obvious Congressional desire to assure prompt implementation of the Act and in the absence of specific statutory language restricting delegation, the Court must reject plaintiffs' contentions and conclude that the Congressional intent was to permit the Secretary to delegate his authority to "consult" and "designate".

■  From the evidence adduced in this cause, the Court also concludes that the Secretary in fact delegated his authority to consult and designate.  By his October 23, 1975 letter to the Governors of Missouri and Kansas, the Secretary designated the Regional Director of H.E.W. as his representative and to be responsible for providing assistance to them.  The Regional Director in turn notified the Governors by letter of October 27, 1975, that Dr. Wherritt would work with and provide technical assistance to the Governors and their states.

With respect to the delegation of authority to designate, it is undisputed that defendant Wherritt as a Regional Health Administrator was delegated his authority to designate on April 2, 1976, by the Assistant Secretary of Health who had been delegated that function by the Secretary on November 19, 1975.[5]  Thus Dr. Wherritt had

---

**2.**  The issue of whether there was in fact "consultation" with the Governors of Missouri and Kansas prior to the designation as required by the Act is considered later in this Memorandum and Order.

**3.**  For example, 42 U.S.C.A. § 300*l*–4(a) provides that designation of health systems agencies shall be accomplished by ". . . the earliest practicable date after the establishment

. . . of health service areas (but not later than eighteen months after January 4, 1975)."

**4.**  The total number of pages involved in the two applications from MARC and MASHA was, according to the evidence, nearly 1,000.

**5.**  *Federal Register* publication of the delegation of authority to the Regional Health Administrator was not until April 15, 1976.  Plaintiff has not shown, however, that it was injured or

been delegated his authority to designate prior to the time he in fact made his designation on approximately April 7, 1976.

### Issue of Consultation

The Act requires that no agreement may be entered into with any entity for conditional designation as a health systems agency until ". . . the Secretary has consulted with the Governor of each State in which such health service area is located and with such other State and local officials as he may deem appropriate, with respect to such designation." 42 U.S.C.A. § 300*l*–4(b)(4)(C). Plaintiff contends that the conditional designation of MASHA as a health systems agency is void for the reason that there was no consultation with the Governors of Missouri and Kansas prior to the selection of MASHA.[6] In its trial brief plaintiff states with respect to that contention:

"It is clear from the statute that the words "consult" and "consultation" mean more than merely receiving recommendations from the governors of the various states, and it is clear from the legislative history that the Congress expected the Secretary (or his designee if his duty to consult could be delegated) to work with the Governor, to confer and to deliberate together with respect to the designation." Plaintiff's Brief at p. 22

Unfortunately, there is no explanation in the Act itself and little legislative history as to the intended meaning of the consultation requirement set forth in § 300*l*–4(b)(4)(C). The Conference Report on the pertinent portion of the Act indicates only that the conference substitute bill corresponded to the Senate-passed bill requiring that the Secretary "consult" with the Governors and that the House-passed version requiring gubernatorial approval of the Secretary's des-

ignation of a health services agency was rejected. *See,* H.Conf.Rep.No. 93–1640, 93rd Cong., 2d Sess., 1974 U.S.Code Cong. & Admin.News, p. 7980. It is apparent that the Conference Report does nothing to elucidate the meaning of "consult".

The Secretary's Regulations are explanatory of his interpretation of the requirement of consultation. Section 122.105(a)(1) of both the proposed and final Regulations (published October 17, 1975, and March 26, 1976, respectively) provides:

"The Secretary, after consultation with and consideration of the recommendations of the appropriate Governor *in accordance with paragraph (a)(2) of this section,* may enter into a Conditional Designation Agreement . . . ." (Emphasis added.)

Paragraph (a)(2) of § 122.105 referred to above provides in pertinent part:

"Prior to entering into a Conditional Designation Agreement with an entity with respect to a particular health service area, the Secretary will provide the Governor of each State in which such health service area is located 30 days in which to review and make recommendations concerning such applications for conditional designation. Where the Secretary does not accept such recommendations, he will provide the Governor with a detailed statement of the reasons for the decision . . . ."

Plaintiff does not dispute that the Governors of Missouri and Kansas were afforded the opportunity to review the applications for designation and to submit their recommendations and comments to the agency as required by these Regulations. Apparently plaintiff instead contends that the statute requires a face to face visit between the Governors and/or their staffs, and the Secretary and/or his agency staff. Plaintiff,

---

adversely affected by the delayed publication. See 5 U.S.C. § 552(a). The delegation of authority to Dr. Wherritt did not pertain to or alter the requirements relating to the content of an application of a health systems agency or the procedural steps necessary to be taken in order to obtain favorable review of such an application. The late publication does not af-

fect the validity of the delegation or subsequent decision.

**6.** Plaintiff's contention that the Secretary could not delegate his duty to consult has been found to be without merit in the immediately preceding section of this Order.

however, has not persuaded the Court that its interpretation of "consultation" is the correct one.

The Court notes that while the definition of "consult" given in Websters Third New International Dictionary does include the meaning "to deliberate", it also encompasses "to ask advice of", "seek opinion of", and "apply for information". The Court is of the opinion that to interpret "consult" as used in the Act to mean only personal confrontation would require strained construction. The Secretary and the agency by regulation and practice have interpreted the Congressional command to consult as being satisfied by the opportunity given to the Governors to express *written* recommendations, criticisms, views. The Secretary's Regulations to that effect are entitled to great weight unless the plaintiff can show that the Secretary "has exceeded his authority and employed means that are not at all appropriate to the end specified in the act of Congress." *United States Dept. of Agriculture v. Willey*, 275 F.2d 264, 272 (8th Cir.), *cert. denied*, 363 U.S. 827, 80 S.Ct. 1597, 4 L.Ed.2d 1522 (1960).

As has been discussed earlier, Congress mandated that this Act be implemented quickly. As a consequence, the Secretary and the Department of Health, Education and Welfare were under severe time limitations in which to select and designate health service areas and health systems agencies. Additionally, Congress required that both State and local officials play a role in the selection and designation processes and, accordingly, required the Secretary to "consult" with Governors. In this Court's view that Congressional requirement was only intended to insure that the agency received the recommendations and views of the Governors and did not mean that the agency, which was heavily burdened to implement the Act within the appropriate time frame, was required to provide at any time, conference or negotiation meetings to the Governors and their staffs.

The evidence adduced in this cause clearly shows that the Department of Health, Education, and Welfare communicated on many occasions with the Governors of Missouri and Kansas or their staffs. The evidence also establishes that Dr. Wherritt, who finally made the designation decision, weighed the recommendations of the Governors before making his final designation of MASHA. Upon his selection, he notified the Governors of his reasons for rejecting their recommendations as he was required to do by the Secretary's Regulations. From the testimony and evidence presented here, the Court is satisfied that Dr. Wherritt carefully weighed all of the submitted recommendations, including the recommendation submitted by MARC in its capacity as an A–95 agency, and complied with the established Regulations in making his selection. The plaintiff has simply failed to convince the Court that its interpretation of the consultation requirement of the Act should be adopted and failed to prove that the Secretary and his agency staff did not in fact consult with the Governors as required within the meanings of the statutory language.

### Issue of Entity Control

Defendant MASHA is a nonprofit private corporation incorporated in and under the laws of Missouri. As such, to be eligible for designation as a health systems agency, it cannot be " . . . a subsidiary of, or otherwise controlled by, any other private or public corporation or other legal entity . . . ." 42 U.S.C.A. § 300*l*–1(b)(1)(A). Plaintiff claims that MASHA did not meet the requirements of that section since it was controlled by a second nonprofit private corporation, the Mid-America Comprehensive Health Planning Agency (hereinafter MACHPA). Plaintiff bases this claim on many facts including that certain directors and other personnel were in large part responsible for the creation and incorporation of MASHA, that 18 of 30 members of MACHPA's board of directors were also directors of MASHA, that MACHPA staff provided technical guidance to MASHA in preparation of its application for designation as a health systems agency, and that

MASHA was provided certain monetary assistance through MACHPA expenditures for phone services, supplies, etc. Along with its claim that MASHA was controlled by MACHPA, plaintiff has sought to show a "conflict of interest" on the part of MACHPA in supporting and recommending MASHA as the candidate best suited to be designated the health systems agency. Plaintiff's argument in this respect apparently is that since the Secretary was required by § 300*l*–4(b), (c) to give priority to an application recommended by MACHPA, as the area's § 314(b) agency,[7] that designation is invalidated because MACHPA recommended the MASHA application after having played a large role in assisting MASHA in preparation of that very application.

It is clear from the statutory language that Congress made ineligible for designation as a health systems agency any private entity controlled in a stock ownership sense as a subsidiary. But the parties and the Court have been unable to find any legislative history which hints at what Congress intended in § 300*l*–1(b)(1)(A) by addition of the phrase, "or otherwise controlled by." The Secretary, however, has defined "control" in § 122.102(a) of his Regulations.

"   .   .   .   for purposes of this subpart, a corporation   .   .   .   is controlled by another private or public corporation or legal entity where such corporation or other legal entity is legally empowered to exercise authority over its performance of the health planning and development functions."

Since written and adopted by the agency designated to implement the Act, the Regulations should be accorded weight.

■ After careful consideration of the Act, its purpose, the statutory language, and the Regulations the Court is convinced that Congress intended that a health systems agency be an autonomous entity free from any type of tie or relationship with another entity which could ultimately allow that second entity the opportunity to direct or exercise the health planning and development functions of the health systems agency. Of particular significance in respect to plaintiff's claim of control by MACHPA is the fact that MACHPA will receive no further funding as a § 314(b) agency on approximately June 30, 1976, and will cease to exist. As it will no longer exist, MACHPA as an entity cannot "control", direct, or exercise the functions reserved to MASHA as the health systems agency. Thus when it undertakes its planning and development functions MASHA will clearly be an autonomous entity as intended by Congress.

■ In addition to the foregoing matters, the plaintiff's evidence fails to prove that MACHPA does now or ever has actually controlled MASHA under any definition of control. The Court is not persuaded that the existence of commonality of certain directors in any way by itself evidences control. Also any technical assistance or staff support given to MASHA does not show control. On the contrary as a § 314(b) agency soon to be phased out, some of the transitional activities in which MACHPA could engage were assistance in the establishment and incorporation of an entity or entities that would be eligible to apply for designation as a health systems agency, use of staff members to provide technical assistance and guidance to such an entity as MASHA in preparing its application for designation, and assistance to a potential applicant in development of administrative and management policies and procedures. Thus many of the MACHPA activities which plaintiff claims are evidence of control over MASHA were in fact activities properly and legitimately carried out in its role as a § 314(b) agency. While plaintiff has claimed that certain other activities were not proper, such as expenditure of MACHPA funds for assistance to MASHA, the Court is not persuaded that those activities, even if improper, evidence control and thus require that the designation of MASHA be set aside. The Court is not concerned here with the question of whether

---

7. A "§ 314(b) agency" is the term applied to that entity which has developed a plan pursuant to and been designated under the provisions of 42 U.S.C. § 246(b).

MACHPA properly expended its own grant monies. Likewise the Court does not consider relevant to the present issue before it plaintiff's contention that certain of the review procedures or activities undertaken by MACHPA were not in accord with its own by-laws. What the Court has considered is whether any of the evidence adduced here proves that MASHA was an entity controlled by MACHPA. The conclusion and finding is that it was not.

Plaintiff has also claimed that the MACHPA recommendation of MASHA involved a conflict of interest for the reasons that (1) the recommendation was voted upon by MACHPA directors who were at the same time MASHA directors and (2) MACHPA had actively aided and assisted MASHA in preparation of the very application being recommended.

█ The Court finds this claim meritless. Under the perhaps peculiar provisions of this particular statute, a § 314(b) agency can itself be an applicant for designation as a health systems agency and at the same time be responsible to review and recommend to H.E.W. its own application. As Congress has explicitly provided that a § 314(b) agency can properly pass on and recommend itself as an applicant for designation, the Court cannot say that there was a conflict of interest which would in any way affect the validity of the present designation when MACHPA recommended MASHA. The Court also notes with interest that plaintiff MARC, as an A–95 agency, reviewed and then recommended to H.E.W. that its own application be approved.

### Issue of Notification to the A–95 Agency

In its complaint MARC asserts that the Department of Health, Education and Welfare failed to notify it, in its capacity as the area's A–95 agency, of the MASHA designation and grant award within the time required by Regulations issued by the Office of Management and Budget under § 204 of the Demonstration Cities and Metropolitan Development Act of 1966, Title IV of the Intergovernmental Cooperation Act of 1968, and § 102(2)(C) of the National Environmental Policy Act of 1969. Plaintiff has not addressed this issue in its trial brief, and it appears to the Court that plaintiff has abandoned this claim. In any event, the evidence establishes that 1) there was no particular form of notice required to be sent from H.E.W. to MARC notifying that agency of the designation and grant award, 2) MARC, in fact, received notice by a letter from defendant Wherritt under date of April 9, 1976, that its application for designation had been rejected and that MASHA had been designated, and 3) on April 23, 1976, MARC received a letter mailed from the office of Dr. Wherritt on April 21, 1976, advising that effective April 12, 1976, a designation agreement had been entered into with MASHA and setting forth comments in response to matters raised in MARC's review of the MASHA application.

█ The Court finds that MARC, as an unsuccessful applicant, was notified of the designation decision. Thus plaintiff cannot successfully complain that it did not have actual notice as an A–95 agency of the H.E.W. action within the time requirements set forth in the O.M.B. Regulations. Further, if there was a failure of Dr. Wherritt or H.E.W. to comply precisely with the time requirements of the O.M.B. Regulations it was *de minimus* and is an insufficient reason to set aside and invalidate the designation decision.

### Issue of Abuse of Discretion

In addition to its specific claims discussed above, plaintiff asserts that the designation decision should be set aside for the reason that it was arbitrary, capricious, and made in bad faith. In support of that claim, plaintiff argues that a long list of various actions or inactions of the Department of Health, Education and Welfare and defendants Wherritt and Mathews are indicative of a pre-determined bias against MARC's application and additionally show:

" . . . that the duties required under the Act of the Secretary (and his delegate) were not performed, that the limits of authority were transgressed, the statutory guidelines of authority were not fol-

lowed, bad faith was exercised and the exercise of discretion did not take place but that a previously decided determination in this instance did take place in order to divest elected officials from having a role in the health planning process thereby negating the American political process and placing a governmental function in the hands of non-elected persons, contrary to the wishes of locally elected officials." Plaintiff's Trial Brief at 50.

■ In undertaking review of an actual agency decision, this Court can only consider whether the agency acted within the scope of statutory authority and whether the decision was based upon a consideration of the relevant factors without a clear error of judgment. *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971). This Court cannot substitute its judgment for that of the agency.

■ After careful review of the evidence adduced in this cause and consideration of plaintiff's arguments with respect thereto, the Court concludes that plaintiff has failed to meet its burden of showing that the Secretary (or any of his agency staff exercising delegated authority) acted outside the scope of the Act in promulgation of Regulations or in the decision-making processes. Further, the evidence before the Court does not show that the decision here in question was made without consideration of all relevant factors set forth in the Act or that there was an error of judgment and abuse of discretion. Plaintiff's dissatisfaction with the selection of MASHA is no basis on which to set aside the designation decision. In the opinion of the Court that decision was made after consideration of the relevant statutory factors and all of the recommendations submitted to the Department. This is in part evidenced by the fact that Dr. Wherritt expressly recognized one of the primary concerns of Governors Bond and Bennett and attached as a condition to the designation that MASHA develop a plan to include more elected officials on its governing body. And in compliance with the Act, Dr. Wherritt gave priority to the MASHA applica-

tion which had been recommended by the § 314(b) agency and the regional medical program. In summary, the Court is not convinced that the Secretary or Dr. Wherritt exceeded their authority, abused discretion, or otherwise failed to carry out their functions in compliance with the mandate of the statute.

Accordingly, for the foregoing reasons and findings, the request for preliminary and permanent injunctions and requests for all other relief of any kind as set forth in plaintiff's complaint is hereby denied.

IT IS SO ORDERED.